# THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

**ROBERT DAVIS,**                                     **Hon. ARTHUR TARNOW**
     Plaintiff,                                     Case No. 15:   -cv-

v.

**PROFESSIONAL REPRESENTATIVES ORGANIZATION,**
**and**
**MICHIGAN AFSCME COUNCIL 25 AFL-CIO,**
     Defendants.
_____/

ANDREW A. PATERSON (P18690)
Attorney for Plaintiff Robert Davis
46350 Grand River Ave., Suite C
Novi, MI 48374
(248) 568-9712

> An action/motion seeking an exemption from the prohibition from union employment set forth under 29 U.S.C. § 504(a), was filed in *United States v Robert Davis* a complaint with similar factual allegations, occurrences and law, as alleged in this complaint, was previously filed in this Court, and given **Case No. 12-20224 assigned to Senior Judge Arthur Tarnow**.

_____/

## VERIFIED COMPLAINT FOR DECLARATORY JUDGMENT

PLAINTIFF, ROBERT DAVIS ("**Plaintiff Davis**"), by and through his attorney,

ANDREW A. PATERSON, for his Verified Complaint for Declaratory Judgment

("**Complaint**"), states and alleges the following:

## I.    NATURE OF PLAINTIFF'S CLAIM

1. Plaintiff Davis' claim is brought pursuant to § 301 of the Labor Management Relations

   Act ("**LMRA**"), being 29 U.S.C. § 185(a); § 9(a) of the National Labor Relations Act

   ("**NLRA**"), being 29 U.S.C. § 159(a); 28 U.S.C. § 1337; and the Declaratory Judgment

   Act, 28 U.S.C. 2201, *et seq*.

2. Plaintiff alleges that the Defendant Professional Representatives Organization ("**Defendant PRO Union**") breached its duty of fair representation and that Defendant Michigan AFSCME Council 25 AFL-CIO ("**Defendant AFSCME**") unlawfully and wrongfully terminated Plaintiff Davis from his union position of Staff Representative, in violation of the governing collective bargaining agreement ("**Collective Bargaining Agreement**") that was entered into by and between Defendant PRO Union and Defendant AFSCME.

3. Plaintiff's Complaint and this action is considered to be a "hybrid § 301" action. As the Sixth Circuit Court of Appeals has explained "[a] hybrid section 301 action involves two constituent claims: breach of a collective bargaining agreement by the employer and breach of the duty of fair representation by the union." See, *Garrision v Cassens Trans.,* 334 F.3d 528, 538 (6thCir. 2003). And …"to recover against either the Company or the Union, [the plaintiff] must show that the Company breached the Agreement and that the Union breached its duty of fair representation. Unless [the plaintiff] demonstrates *both* violations, [he] cannot succeed against either party." *Bagsby v Lewis Bros., Inc. of Tenn.,* 820 F.2d 799, 801 (6th Cit. 1987) (emphasis in original).

4. Plaintiff Davis has exhausted all internal union procedures and remedies set forth in the Collective Bargaining Agreement as well as stated in the Constitution of the Defendant PRO Union, all prior to Plaintiff commencing this action. See *Chapman v UAW local 1005*, 670 F.3d 677 (6th Cir. 2012).

5. Plaintiff Davis' action is timely because it has been commenced within the six-month statute of limitation period for bringing § 301 hybrid actions. See *Schoonover v Consolidated Feightways Corp. of Delaware,* 49 F.3d 219, 221-222 (6th Cir. 1995) (Six-

month statute of limitations for hybrid § 301 actions did not begin to run until the arbitration panel's decision was reduced to writing.); see also *Martin v Lake Counter Sewer Co., Inc.,* 269 F.3d 673 (6th Cir. 2001).

## II.    JURISDICTION AND VENUE

6.  This Court has jurisdiction over Plaintiff Davis' claims pursuant to 28 U.S.C. § 1337 and 29 U.S.C. § 185(a), and 29 U.S.C. § 159(a).

7.  This Court also has jurisdiction to render and issue a declaratory judgment, as requested by the Plaintiff Davis herein, pursuant to the Declaratory Judgment Act, 28 U.S.C. 2201, *et seq.*

8.  Venue is proper under 28 U.S.C. § 1391 because the Plaintiff Davis is a resident of this district, all Defendants reside or have their principal offices located in this district, and the actions giving rise to this complaint all occurred within this district.

## III.    PARTIES

9.  Plaintiff Davis was an employee of Defendant AFSCME for nearly 13 years prior to his unlawful and wrongful termination, as hereinafter alleged in detail, from his employment on September 18, 2014.  As an employee of the Defendant AFSCME, Plaintiff Davis was also a dues paying member of Defendant PRO Union.

10. Defendant PRO Union is the sole and exclusive bargaining agent with respect to wages, hours and other conditions of employment for all of the employees of Defendant AFSCME similarly situated to Plaintiff Davis.  Defendant PRO Union does not represent Defendant AFSCME's: elected officials, systems administrators, department heads, assistants to elected officials, attorneys, clerical, custodial staff, temporary employees, project staff or pre-arbitration analysts.

11. Defendant AFSCME is an unincorporated, voluntary labor association certified by the Michigan Employment Relations Commission, pursuant to the Michigan Public Employee Relations Act, Mich. Comp. Laws § 432.201, *et se*q.

## IV.   <u>COMMON FACTS</u>

12. On April 5, 2012, Plaintiff Davis was indicted by the United States Government on 16 counts alleging his misconduct while an elected member of the Highland Park Board of Education, being Criminal Case No. 12-20224 ("**Plaintiff Davis' Criminal Matter**"). **(See Plaintiff Davis' affidavit attached hereto as Exhibit A).**

13. On June 28, 2012, a First Superseding Indictment was issued against Plaintiff Davis adding four new counts alleging his filing of false tax returns.  **(See Plaintiff Davis' affidavit attached hereto as Exhibit A).**

14. After Plaintiff Davis' indictment became public, Plaintiff Davis remained and continued his employment with Defendant AFSCME, as a Union Staff Representative, until September 18, 2014.  **(See Plaintiff Davis' affidavit attached hereto as Exhibit A).**

15. On September 2, 2014, Plaintiff Davis pled guilty before Senior United States District Court Judge Arthur Tarnow ("**Judge Tarnow**") to one count of Unlawful Conversion of Program Funds and one count of Filing a False Income Tax return for the tax year 2007. **(See Plaintiff Davis' affidavit attached hereto as Exhibit A).**

16. On December 18, 2014, Judge Tarnow sentenced Plaintiff Davis to serve 18 months in a minimum security camp.  **(See Plaintiff Davis' affidavit attached hereto as Exhibit A).**

17. On December 29, 2014, Judge Tarnow signed and entered the criminal judgment against Plaintiff Davis in Plaintiff Davis' Criminal Matter.  **(See Plaintiff Davis' affidavit attached hereto as Exhibit A).**

18. As noted above, Plaintiff Davis was an employee of Defendant AFSCME for nearly 13 years until Plaintiff Davis was wrongfully and unlawfully terminated, as hereinafter alleged in further detail, from his position as Staff Representative on September 18, 2014. Such termination was stated by Defendant AFSCME to be as a result of him pleading guilty in federal court to the two federal felony counts.  **(See Plaintiff Davis' affidavit attached hereto as Exhibit A; and see Defendant AFSCME's September 18, 2014 Termination Letter to Plaintiff Davis attached hereto as Exhibit C).**

19. At the time of this termination, Plaintiff Davis was a dues paying member, in good standing, of Defendant PRO Union.  **(See Plaintiff Davis' affidavit attached hereto as Exhibit A).**

## V.    CAUSES OF ACTION

## COUNT I- Defendant PRO Union Breached Its Duty of Fair Representation By Unilaterally Withdrawing Plaintiff Davis' Discharge Grievance From Arbitration

20. Plaintiff re-alleges and incorporates by reference the allegations contained in the previous paragraphs as if fully set forth herein.

21. As noted, on September 2, 2014, Plaintiff Davis pled guilty in federal court to two federal felonies and, on September 3, 2014, Plaintiff Davis was summoned to a meeting with his immediate supervisor, the President of Defendant AFSCME and with the President of the Defendant PRO Union. Plaintiff Davis was told that the meeting was to be for the purpose of discussing the possible termination of him from his employment

position as a Union Staff Representative.  **(See Plaintiff Davis' affidavit attached hereto as Exhibit A).**

22. At the meeting on September 3, 2014, Defendant AFSCME immediately removed Plaintiff Davis from his duties, without pay, and a disciplinary hearing for Plaintiff Davis was initially scheduled to be held on September 9, 2014 at 10 a.m.[1]  (**See Defendant AFSCME's September 3, 2014 Disciplinary Action Letter to Plaintiff Davis attached hereto as Exhibit B**).

23. As a result of the disciplinary hearing on September 18, 2014, Defendant AFSCME terminated Plaintiff Davis from his position as Staff Representative.  The reason stated by Defendant AFSCME for Plaintiff Davis' termination was: "The reason for discipline (sic) was Mr. Davis's, plea (sic) related to federal indictment regarding High (sic) Park School."  (**See Defendant AFSCME's September 18, 2014 Termination Letter to Plaintiff Davis attached hereto as Exhibit C**).

24. On September 18, 2014, Plaintiff Davis requested the President of Defendant PRO Union to file a grievance on his behalf, challenging both his suspension without pay and his subsequent termination.  (**See Plaintiff Davis' Discharge Grievance attached hereto as Exhibit D**).

25. During the September 18, 2014 grievance hearing, the President of Defendant PRO Union, at the request of Plaintiff Davis, requested ***expedited*** arbitration, and the President of Defendant AFSCME graciously so agreed to an expedited arbitration. [2] (**See**

---

[1] This initial disciplinary hearing was rescheduled and later held on September 18, 2014.

[2] President of Defendant AFSCME even agreed to allow the Defendant PRO to pick the arbitrator of Plaintiff Davis' choice.

**Defendant AFSCME's September 18, 2014 Termination Letter to Plaintiff Davis attached hereto as Exhibit C**).

26. In accordance with the grievance procedures set forth in Articles 8 & 9 of the Collective Bargaining Agreement[3] by and between Defendant PRO Union and Defendant AFSCME, the President of the PRO Union and the President of Defendant AFSCME met on September 24, 2014, regarding Plaintiff Davis' grievance challenging his termination and suspension.  (**See Defendant AFSCME's September 24, 2014 Interoffice Memo to the President of Defendant PRO attached hereto as Exhibit E; and see Articles 8 & 9 of the Collective Bargaining Agreement attached hereto as Exhibit O**).

27. On September 24, 2014, in accordance with the grievance procedure set forth in Articles 8 & 9 of the Collective Bargaining Agreement by and between Defendant PRO Union and Defendant AFSCME, the President of Defendant AFSCME, issued a written denial of Plaintiff Davis' grievance.  (**See Defendant AFSCME's September 24, 2014 Interoffice Memo to the President of Defendant PRO attached hereto as Exhibit E; and see Articles 8 & 9 of the Collective Bargaining Agreement attached hereto as Exhibit L**).

28. On that same day, September 24, 2014, Plaintiff Davis, pursuant to article 9, section 4 of the Collective Bargaining Agreement, submitted a written request, via email, to the President of Defendant PRO Union requesting the Defendant PRO Union process his grievance to arbitration, pursuant to Step 3 of the grievance procedure.  (**See Plaintiff**

---

[3] Articles 8 & 9 of the Collective Bargaining Agreement are attached hereto as Exhibit O.

**Davis' September 24, 2014 Email to Defendant PRO requesting to proceed to arbitration attached hereto as Exhibit F**).

29. On that same day, September 24, 2014, the Defendant PRO Union's GARB Committee, issued a letter to Plaintiff Davis informing Plaintiff Davis that the GARB Committee of the Defendant PRO Union had rejected Plaintiff Davis' case for arbitration based on the GARB Committee's (*flawed*) interpretation of the Department of Labor Management Standards (29 U.S.C. § 504).  The GARB Committee claimed that the Department of Labor Management Standards ***immediately*** bars Plaintiff Davis' continued employment in his union position as a staff representative.  (**See Defendant PRO Union's GARB Committee's September 24, 2014 Letter w/attachments Denying Plaintiff Davis' request to proceed to arbitration attached hereto as Exhibit G).**

30. In accordance with the Collective Bargaining Agreement and with the Defendant PRO Union's Constitution, Plaintiff Davis timely filed, on October 8, 2014, to the Executive Board of the Defendant PRO Union, a written appeal of the Defendant PRO Union's GARB Committee's denial of taking Plaintiff Davis' grievance to arbitration.  (**See Plaintiff Davis' October 8, 2014 Written Appeal of Defendant PRO Union's GARB Committee's Denial attached hereto as Exhibit H).**

31. On October 23, 2014, the Executive Board of the Defendant PRO Union issued its written letter to Plaintiff Davis, informing him of its decision *not* to reverse the decision of the Defendant PRO Union's GARB Committee, thus upholding the Defendant PRO Union's GARB Committee's decision not to advance Plaintiff Davis' discharge grievance to arbitration.  (**See Executive Board of Defendant PRO Union's October 23, 2014 Letter denying Plaintiff Davis' appeal attached hereto as Exhibit I**).

32. On that same day, October 23, 2014, again in accordance with the Constitution of the Defendant PRO Union, Plaintiff Davis, via email, informed the Defendant PRO Union of his intentions to appeal the Defendant PRO Union's Executive Board's adverse decision, to the full membership of the Defendant PRO Union.  (**See Plaintiff Davis' October 23, 2014 Email to Defendant PRO Union attached hereto as Exhibit J**).

33. Defendant PRO Union thereafter failed to hold a membership meeting(s) for the purpose of the full membership being able to vote on Plaintiff Davis' appeal request to advance his grievance to arbitration.

34. Accordingly, Defendant PRO Union failed to process Plaintiff Davis' discharge grievance to arbitration in an expeditious fashion as required by its own Constitution and despite the Defendant AFSCME having so agreed to an expedited arbitration of his grievance.  (**See Plaintiff Davis' affidavit attached hereto as Exhibit A**).

35. Although Defendant PRO Union did not receive an affirmative vote from its full membership as required by its Constitution, Defendant PRO Union nonetheless, on December 5, 2014, filed with the American Arbitration Association ("**AAA**") a demand for arbitration regarding Plaintiff Davis' discharge grievance.[4]  (**See December 5, 2014 Demand for Arbitration filed with AAA attached hereto as Exhibit K).**

36. It was not until January 24, 2015, when the President of Defendant PRO Union informed Plaintiff Davis, via text message, that an arbitration case *had been* filed with AAA.  The President said at that time, that the arbitration was filed *in order to protect the timelines*

---

[4] On February 25, 2015, Plaintiff Davis received from Defendant Pro Union's counsel a copy of all filings and communications made with AAA regarding Plaintiff Davis' discharge grievance.

*because Defendant AFSCME would not grant the Defendant PRO Union any further extensions.*  (**See Plaintiff Davis' affidavit attached hereto as Exhibit A**).

37. Nevertheless and despite the Defendant AFSCME agreement to an expedited arbitration, on February 18, 2015, the Defendant PRO Union sent Plaintiff Davis a letter informing him that the Defendant PRO Union had decided to withdraw Plaintiff Davis' grievance from arbitration, as a result of Plaintiff Davis being sentenced to 18 months in a minimum security camp.[5]  (**See Defendant PRO Union's February 18, 2015 Letter to Plaintiff Davis attached hereto as Exhibit L**).

38. On February 23, 2015, counsel for the Defendant PRO Union sent an email to AAA informing AAA that Defendant PRO was withdrawing Plaintiff Davis' discharge grievance from arbitration.  (**See February 23, 2015 email from Defendant PRO Union's counsel to AAA withdrawing Plaintiff Davis' discharge grievance from arbitration attached hereto as Exhibit M**).

39. That same day, February 23, 2015, AAA issued its formal written confirmation to Defendant PRO Union and Defendant AFSCME informing them that they had received the Defendant PRO Union's request to withdraw Plaintiff Davis' discharge grievance from arbitration and that AAA was going to close its file.  (**See AAA's February 23, 2015 letter to Defendants attached hereto as Exhibit N**).

40. Defendant PRO Union's unilateral decision to withdraw Plaintiff Davis' discharge grievance from the arbitration, and its failure to expedite Plaintiff Davis' arbitration as

---

[5] Although Defendant PRO Union's February 18, 2015 letter suggests that Plaintiff Davis' discharge grievance was filed with AAA for arbitration, to date, Plaintiff Davis has not received any written verification from AAA that his grievance discharge was in fact filed with AAA, all despite numerous written requests to the Defendant PRO Union requesting such documentation.

was agreed upon between the Defendants, constitutes a breach of Defendant PRO Union's statutory duty to fairly represent its member Plaintiff Davis.

41. Plaintiff Davis' discharge grievance was based on his claim that Defendant AFSCME and Defendant PRO Union were misinterpreting the prohibition on union employment that is set forth in 29 U.S.C. § 504(a). Plaintiff Davis' termination on September 18, 2014, based upon such a misinterpretation, was wrongful.

42. Additionally, Plaintiff Davis claims that Defendant AFSCME did not have "just cause" to so terminate Plaintiff Davis on September 18, 2014. "Just cause", as contained in Article 9, Section 1 of the Collective Bargaining Agreement did not exist with respect to Plaintiff Davis' facts and situation on September 18, 2014. (**See Plaintiff Davis' Discharge Grievance attached hereto as Exhibit D**; and see also **Plaintiff Davis' October 8, 2014 Written Appeal of Defendant PRO Union's GARB Committee's Denial attached hereto as Exhibit G).**

43. 29 U.S.C. § 504(a) prohibits individuals from working or continuing to be employed by a labor union in any capacity, if they are **"convicted"** of certain crimes.[6]

44. As set forth above, Plaintiff Davis' "conviction" was on December 29, 2014 and it is the gravamen of Plaintiff Davis' claim that his discharge on September 18, 2014 was premature and wrongful by Defendant AFSCME because 29 U.S.C. § 504(a) **was not**

---

[6] 29 U.S.C. 504(a) provides: "(a) No person who is or has been a member of the Communist Party or who has been convicted of, or served any part of a prison term resulting from his conviction of, robbery, bribery, extortion, embezzlement, grand larceny, burglary, arson, violation of narcotics laws, murder, rape, assault with intent to kill, assault which inflicts grievous bodily injury, or a violation of subchapters III or IV of this chapter any felony involving abuse or misuse of such person's position or employment in a labor organization or employee benefit plan to seek or obtain an illegal gain at the expense of the members of the labor organization or the beneficiaries of the employee benefit plan, or conspiracy to commit any such crimes or attempt to commit any such crimes, or a crime in which any of the foregoing crimes is an element, shall serve or be permitted to serve-…"

applicable to Plaintiff Davis at that time.  (**See Plaintiff Davis' Discharge Grievance attached hereto as Exhibit D**; and see also **Plaintiff Davis' October 8, 2014 Written Appeal of Defendant PRO Union's GARB Committee's Denial attached hereto as Exhibit H).**

45. Plaintiff Davis' should not have been discharged on September 18, 2014 for the prohibition set forth under 29 U.S.C. § 504(a) was not applicable to Plaintiff Davis. Section 504(a) was inapplicable against Plaintiff Davis at that time because by its very definition, Plaintiff Davis simply was not "convicted" of a federal felony on September 18, 2014.  (**See Plaintiff Davis' Discharge Grievance attached hereto as Exhibit D**; and see also **Plaintiff Davis' October 8, 2014 Written Appeal of Defendant PRO Union's GARB Committee's Denial attached hereto as Exhibit H).**

46. The term "convicted" as it is used under § 504(a) is defined under § 504(c)(1).  29 U.S.C. § 504(c)(1) provides: "For the purpose of this section-- (1) A person shall be deemed to have been "convicted" and under the disability of "conviction" ***from the date of the judgment of the trial court***, regardless of whether that judgment remains under appeal." (emphasis supplied).

47. The significance of this definition was even noted by the United States Attorney and the Department of Labor, in their Response Brief in Opposition to Plaintiff Davis' Motion for Exemption Under 29 U.S.C. § 504(a) filed in his Criminal Matter[7].  At page 2 of their Response Brief, the United States Attorney on behalf of the Department of Labor

---

[7] Plaintiff Davis' Motion for Exemption pursuant to 29 U.S.C. §504(a) is currently pending before Judge Tarnow.  A motion hearing on Plaintiff Davis' Motion for Exemption pursuant to 29 U.S.C. 504(a) was held on November 19, 2014 and at that time, Judge Tarnow took the matter under advisement.  *See* Docket Nos. 59 & 60 in Plaintiff Davis' Criminal Matter.

said:  "As an initial matter, Davis' motion is premature, for two reasons: [the first being] in the absence of judgment of sentence, [Davis] does not stand "convicted" within the meaning of § 504."  ***See* p. 2 of Government's Response Brief, Docket No. 70 in Plaintiff Davis' Criminal Matter.**

48. As noted, Judge Tarnow signed and entered the criminal judgment in Plaintiff Davis' Criminal Matter on December 29, 2014.  Thus, the prohibition set forth under 29 U.S.C. § 504(a) was not applicable to Plaintiff Davis until that date and it was not applicable on the date of he was discharged, September 18, 2014, by Defendant AFSCME.

49. And although Plaintiff Davis was sentenced on December 18, 2014, Judge Tarnow did not actually, and officially, enter and sign, the criminal judgment in Plaintiff Davis' Criminal Matter, until December 29, 2014.  Thus, the actual legal effective date of Plaintiff Davis' criminal judgment was and is December 29, 2014.[8]

50. Accordingly, Plaintiff Davis was legally eligible to remain gainfully employed by Defendant AFSCME under 29 U.S.C. § 504(a) until such time as Judge Tarnow so signed and entered the criminal judgment in Plaintiff Davis' Criminal Matter on December 29, 2014.[9]

51. Plaintiff Davis additionally claims that Defendant AFSCME lacked "just cause" to terminate Plaintiff Davis on September 18, 2014, as "just cause" is  contained in Article 9, Section 1 of the Collective Bargaining Agreement.

---

[8] Although Judge Tarnow announced Plaintiff Davis' sentence during the December 18, 2014 hearing, it is well understood that courts speak through their written orders and not through their oral pronouncements.  *See Bell v. Thompson,* 545 U.S. 794, 805, 125 S.Ct. 2825, 162 L.Ed.2d 693 (2005) ("Basic to the operation of the judicial system is the principle that a court speaks through its judgments and orders.").

[9] Notably, 29 U.S.C. § 504(b) makes it a crime for a labor organization to retain and/or employ a person "convicted" of the listed offenses set forth in § 504(a).

52. Article 9, Section 1 of the Collective Bargaining Agreement by and between Defendant PRO Union and Defendant AFSCME, expressly requires that "**all disciplinary actions shall be for just cause**." (emphasis supplied)  (**See Article 9, Section 1 of the Collective Bargaining Agreement attached hereto as Exhibit O**).

53. Defendant AFSCME did not have "just cause" to terminate Plaintiff Davis on September 18, 2014 as required by the Collective Bargaining Agreement. As noted, Plaintiff Davis remained employed with Defendant AFSCME as a Union Staff Representative, even after his indictment became public.  **(See Plaintiff Davis' affidavit attached hereto as Exhibit A).**

54. In fact, even after Plaintiff Davis was indicted and his indictment became public, Plaintiff Davis was selected by the President of Defendant AFSCME to represent Defendant AFSCME in June 2012 at the ***prestigious*** Senior Executives in State and Local Government program, held at Harvard University's Kennedy School of Government.  **(See Plaintiff Davis' affidavit attached hereto as Exhibit A).**

55. And further to the quality of the conduct of Plaintiff Davis' employment with Defendant AFSCME, many local union presidents and their members wrote letters of support to Judge Tarnow, on behalf of Plaintiff Davis's motion to retain his employment as Staff Representative with Defendant AFSCME and these letters were so supporting his continued employment based upon his skill in representing the local union and their members.  (**See Local Union Presidents' Letters of Support attached hereto as Exhibit M**).

56. Plaintiff Davis' indictment and a presumed pending incarceration, based upon his judgment of conviction, was not relevant to the merits of Plaintiff Davis' discharge

grievance for the lack of "just cause". Plaintiff Davis' discharge grievance was seeking to have an arbitrator determine that Plaintiff Davis' discharge on September 18, 2014 was not for "just cause" under the Collective Bargaining Agreement. Further Plaintiff Davis sought the arbitrator to determine that the prohibition set forth under 29 U.S.C. § 504(a) was indeed not applicable to Plaintiff Davis at the time of his termination and discharge on September 18, 2014. And Plaintiff Davis' pending incarceration does not now adversely impact the merits of Plaintiff Davis' discharge grievance for a premature discharge based upon a misinterpretation of 29 U.S.C. § 504(a) and therefore, Defendant PRO Union had no legal basis for unilaterally withdrawing Plaintiff Davis' discharge grievance from arbitration. (**See Plaintiff Davis' affidavit attached hereto as Exhibit A**).

57. Plaintiff Davis' discharge grievance was not seeking a determination from an arbitrator as to whether Plaintiff Davis could remain employed by Defendant AFSCME *after* Plaintiff Davis was in fact "convicted" under 29 U.S.C. § 504(a). That question will be determined by Judge Tarnow. As noted above, Plaintiff Davis had in fact exercised his right under 29 U.S.C. § 504(a)(B) to seek from Judge Tarnow, as the sentencing judge, an exemption from the prohibition set forth under § 504(a), to be applicable *after* his "conviction."[10]

58. Plaintiff Davis' claim, *at a minimum*, is that he is due back pay from the Defendant AFSCME from September 3, 2014 through December 29, 2014, the latter date being the date when the criminal judgment was signed and entered by Judge Tarnow in Plaintiff

---

[10] Plaintiff Davis' Emergency Motion for Exemption under 29 U.S.C. § 504(a)(B) is currently pending before Judge Tarnow.

Davis' Criminal Matter.[11]  (**See Plaintiff Davis' affidavit attached hereto as Exhibit A**; and see also **Plaintiff Davis' October 8, 2014 Written Appeal of Defendant PRO Union's GARB Committee's Denial attached hereto as Exhibit H).**

59. Accordingly, Defendant PRO Union's decision to withdraw Plaintiff Davis' meritorious discharge grievance from arbitration, and without prior notice to Plaintiff Davis, and Defendant PRO Union's failure to expedite Plaintiff Davis' arbitration on his discharge grievance, as was agreed to between the parties, constitute a breach(es) of its statutory duty of fair representation.

60. "When a union is selected as exclusive representative of the employees in a bargaining unit, it has a duty under § 9(a) of the National Labor Relations Act to fairly represent them." *Courie v Alcoa Wheel & Forged Products*, 577 F.3d 625, 631 (6th Cir. 2009) (citing *Vaca v Sipes*, 386 U.S. 171, 177, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967)).

61. A breach of the statutory duty of fair representation occurs "only when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith." *Vaca v Sipes*, 386 U.S. 171, 190 (1967).

62. Defendant PRO Union's actions to withdraw Plaintiff Davis' meritorious discharge grievance from arbitration and its failure to expedite Plaintiff Davis' arbitration on his discharge grievance, as was agreed to between the parties, were done in bad faith for Defendant PRO Union's actions were made with improper intent and/or motive.  (**See Plaintiff Davis' affidavit attached hereto as Exhibit A).**

---

[11] Plaintiff Davis does not dispute that *if* in fact the prohibition set forth in 29 U.S.C. § 504(a) applies to Plaintiff Davis that said prohibition would have been applicable as of December 29, 2014.

63. Defendant PRO Union's actions to withdraw Plaintiff Davis' meritorious discharge grievance from arbitration, and its failure to expedite Plaintiff Davis' arbitration on his discharge grievance, as was agreed to between the parties, constitute discriminatory behavior by Defendant PRO Union and its actions were intentional, severe, and unrelated to legitimate union objectives.  **(See Plaintiff Davis' affidavit attached hereto as Exhibit A).**

64. Defendant PRO Union's actions to withdraw Plaintiff Davis' meritorious discharge grievance from arbitration and its failure to expedite Plaintiff Davis' arbitration on his discharge grievance, as was agreed to between the parties, were arbitrary because Defendant PRO Union's actions were far outside a range of reasonableness so as to be irrational.  **(See Plaintiff Davis' affidavit attached hereto as Exhibit A).**

65. Defendant PRO Union's actions to withdraw Plaintiff Davis' meritorious discharge grievance from arbitration and its failure to expedite Plaintiff Davis' arbitration on his discharge grievance, as was agreed to between the parties, have caused Plaintiff Davis severe financial and emotional harm.  **(See Plaintiff Davis' affidavit attached hereto as Exhibit A).**

## COUNT II- Defendant AFSCME Unlawfully and Wrongfully Terminated Plaintiff Davis In Violation of the Collective Bargaining Agreement

66. Plaintiff re-alleges and incorporates by reference the allegations contained in the previous paragraphs as if fully set forth herein.

67. As noted, on September 2, 2014, Plaintiff Davis pled guilty in federal court to two federal felonies and, on September 3, 2014, Plaintiff Davis was summoned to a meeting with his immediate supervisor, the President of Defendant AFSCME and with the President of the Defendant PRO Union. Plaintiff Davis was told that the meeting was to

be for the purpose of discussing the possible termination of him from his employment position as a Union Staff Representative. **(See Plaintiff Davis' affidavit attached hereto as Exhibit A).**

68. At the meeting on September 3, 2014, Defendant AFSCME immediately removed Plaintiff Davis from his duties, without pay, and a disciplinary hearing for Plaintiff Davis was initially scheduled to be held on September 9, 2014 at 10 a.m.[12] **(See Defendant AFSCME's September 3, 2014 Disciplinary Action Letter to Plaintiff Davis attached hereto as Exhibit B**).

69. As a result of the disciplinary hearing on September 18, 2014, Defendant AFSCME terminated Plaintiff Davis from his position as Staff Representative. The reason stated by Defendant AFSCME for Plaintiff Davis' termination was: "The reason for discipline (sic) was Mr. Davis's, plea (sic) related to federal indictment regarding High (sic) Park School." **(See Defendant AFSCME's September 18, 2014 Termination Letter to Plaintiff Davis attached hereto as Exhibit C**).

70. On September 18, 2014, Plaintiff Davis requested the President of Defendant PRO Union to file a grievance on his behalf, challenging both his suspension without pay and his subsequent termination. **(See Plaintiff Davis' Discharge Grievance attached hereto as Exhibit D**).

71. During the September 18, 2014 grievance hearing, the President of Defendant PRO Union, at the request of Plaintiff Davis, requested *expedited* arbitration, and the President of Defendant AFSCME graciously so agreed to an expedited arbitration. [13]

---

[12] This initial disciplinary hearing was rescheduled and later held on September 18, 2014.

[13] President of Defendant AFSCME even agreed to allow the Defendant PRO to pick the

(**See Defendant AFSCME's September 18, 2014 Termination Letter to Plaintiff Davis attached hereto as Exhibit C**).

72. In accordance with the grievance procedures set forth in Articles 8 & 9 of the Collective Bargaining Agreement[14] by and between Defendant PRO Union and Defendant AFSCME, the President of the PRO Union and the President of Defendant AFSCME met on September 24, 2014, regarding Plaintiff Davis' grievance challenging his termination and suspension.  (**See Defendant AFSCME's September 24, 2014 Interoffice Memo to the President of Defendant PRO attached hereto as Exhibit E; and see Articles 8 & 9 of the Collective Bargaining Agreement attached hereto as Exhibit O**).

73. On September 24, 2014, in accordance with the grievance procedure set forth in Articles 8 & 9 of the Collective Bargaining Agreement by and between Defendant PRO Union and Defendant AFSCME, the President of Defendant AFSCME, issued a written denial of Plaintiff Davis' grievance.  (**See Defendant AFSCME's September 24, 2014 Interoffice Memo to the President of Defendant PRO attached hereto as Exhibit E; and see Articles 8 & 9 of the Collective Bargaining Agreement attached hereto as Exhibit L**).

74. On that same day, September 24, 2014, Plaintiff Davis, pursuant to article 9, section 4 of the Collective Bargaining Agreement, submitted a written request, via email, to the President of Defendant PRO Union requesting the Defendant PRO Union process his grievance to arbitration, pursuant to Step 3 of the grievance procedure.  (**See Plaintiff**

---

arbitrator of Plaintiff Davis' choice.

[14] Articles 8 & 9 of the Collective Bargaining Agreement are attached hereto as Exhibit O.

**Davis' September 24, 2014 Email to Defendant PRO requesting to proceed to arbitration attached hereto as Exhibit F**).

75. On that same day, September 24, 2014, the Defendant PRO Union's GARB Committee, issued a letter to Plaintiff Davis informing Plaintiff Davis that the GARB Committee of the Defendant PRO Union had rejected Plaintiff Davis' case for arbitration based on the GARB Committee's (*flawed*) interpretation of the Department of Labor Management Standards (29 U.S.C. § 504). The GARB Committee claimed that the Department of Labor Management Standards ***immediately*** bars Plaintiff Davis' continued employment in his union position as a staff representative. (**See Defendant PRO Union's GARB Committee's September 24, 2014 Letter w/attachments Denying Plaintiff Davis' request to proceed to arbitration attached hereto as Exhibit G).**

76. In accordance with the Collective Bargaining Agreement and with the Defendant PRO Union's Constitution, Plaintiff Davis timely filed, on October 8, 2014, to the Executive Board of the Defendant PRO Union, a written appeal of the Defendant PRO Union's GARB Committee's denial of taking Plaintiff Davis' grievance to arbitration. (**See Plaintiff Davis' October 8, 2014 Written Appeal of Defendant PRO Union's GARB Committee's Denial attached hereto as Exhibit H).**

77. On October 23, 2014, the Executive Board of the Defendant PRO Union issued its written letter to Plaintiff Davis, informing him of its decision *not* to reverse the decision of the Defendant PRO Union's GARB Committee, thus upholding the Defendant PRO Union's GARB Committee's decision not to advance Plaintiff Davis' discharge grievance to arbitration. (**See Executive Board of Defendant PRO Union's October 23, 2014 Letter denying Plaintiff Davis' appeal attached hereto as Exhibit I**).

78. On that same day, October 23, 2014, again in accordance with the Constitution of the Defendant PRO Union, Plaintiff Davis, via email, informed the Defendant PRO Union of his intentions to appeal the Defendant PRO Union's Executive Board's adverse decision, to the full membership of the Defendant PRO Union.  (**See Plaintiff Davis' October 23, 2014 Email to Defendant PRO Union attached hereto as Exhibit J**).

79. Defendant PRO Union thereafter failed to hold a membership meeting(s) for the purpose of the full membership being able to vote on Plaintiff Davis' appeal request to advance his grievance to arbitration.

80. Accordingly, Defendant PRO Union failed to process Plaintiff Davis' discharge grievance to arbitration in an expeditious fashion as required by its own Constitution and despite the Defendant AFSCME having so agreed to an expedited arbitration of his grievance.  (**See Plaintiff Davis' affidavit attached hereto as Exhibit A**).

81. Although Defendant PRO Union did not receive an affirmative vote from its full membership as required by its Constitution, Defendant PRO Union nonetheless, on December 5, 2014, filed with the American Arbitration Association ("**AAA**") a demand for arbitration regarding Plaintiff Davis' discharge grievance.[15]  (**See December 5, 2014 Demand for Arbitration filed with AAA attached hereto as Exhibit K**).

82. It was not until January 24, 2015, when the President of Defendant PRO Union informed Plaintiff Davis, via text message, that an arbitration case *had been* filed with AAA.  The President said at that time, that the arbitration was filed *in order to protect the timelines*

---

[15] On February 25, 2015, Plaintiff Davis received from Defendant Pro Union's counsel a copy of all filings and communications made with AAA regarding Plaintiff Davis' discharge grievance.

*because Defendant AFSCME would not grant the Defendant PRO Union any further*

*extensions*.  (**See Plaintiff Davis' affidavit attached hereto as Exhibit A**).

83. Nevertheless and despite the Defendant AFSCME agreement to an expedited arbitration, on February 18, 2015, the Defendant PRO Union sent Plaintiff Davis a letter informing him that the Defendant PRO Union had decided to withdraw Plaintiff Davis' grievance from arbitration, as a result of Plaintiff Davis being sentenced to 18 months in a minimum security camp.[16]  (**See Defendant PRO Union's February 18, 2015 Letter to Plaintiff Davis attached hereto as Exhibit L**).

84. On February 23, 2015, counsel for the Defendant PRO Union sent an email to AAA informing AAA that Defendant PRO was withdrawing Plaintiff Davis' discharge grievance from arbitration.  (**See February 23, 2015 email from Defendant PRO Union's counsel to AAA withdrawing Plaintiff Davis' discharge grievance from arbitration attached hereto as Exhibit M**).

85. That same day, February 23, 2015, AAA issued its formal written confirmation to Defendant PRO Union and Defendant AFSCME informing them that they had received the Defendant PRO Union's request to withdraw Plaintiff Davis' discharge grievance from arbitration and that AAA was going to close its file.  **(See AAA's February 23, 2015 letter to Defendants attached hereto as Exhibit N).**

86. Defendant PRO Union's unilateral decision to withdraw Plaintiff Davis' discharge grievance from the arbitration, and its failure to expedite Plaintiff Davis' arbitration as

---

[16] Although Defendant PRO Union's February 18, 2015 letter suggests that Plaintiff Davis' discharge grievance was filed with AAA for arbitration, to date, Plaintiff Davis has not received any written verification from AAA that his grievance discharge was in fact filed with AAA, all despite numerous written requests to the Defendant PRO Union requesting such documentation.

was agreed upon between the Defendants, constitutes a breach of Defendant PRO Union's statutory duty to fairly represent its member Plaintiff Davis.

87. Plaintiff Davis' discharge grievance was based on his claim that Defendant AFSCME and Defendant PRO Union were misinterpreting the prohibition on union employment that is set forth in 29 U.S.C. § 504(a). Plaintiff Davis' termination on September 18, 2014, based upon such a misinterpretation, was wrongful.

88. Additionally, Plaintiff Davis claims that Defendant AFSCME did not have "just cause" to so terminate Plaintiff Davis on September 18, 2014.  "Just cause", as contained in Article 9, Section 1 of the Collective Bargaining Agreement did not exist with respect to Plaintiff Davis' facts and situation on September 18, 2014.  (**See Plaintiff Davis' Discharge Grievance attached hereto as Exhibit D**; and see also **Plaintiff Davis' October 8, 2014 Written Appeal of Defendant PRO Union's GARB Committee's Denial attached hereto as Exhibit G).**

89. 29 U.S.C. § 504(a) prohibits individuals from working or continuing to be employed by a labor union in any capacity, if they are **"convicted"** of certain crimes.[17]

90. As set forth above, Plaintiff Davis' "conviction" was on December 29, 2014 and it is the gravamen of Plaintiff Davis' claim that his discharge on September 18, 2014 was premature and wrongful by Defendant AFSCME because 29 U.S.C. § 504(a) **was not**

---

[17] 29 U.S.C. 504(a) provides: "(a) No person who is or has been a member of the Communist Party or who has been convicted of, or served any part of a prison term resulting from his conviction of, robbery, bribery, extortion, embezzlement, grand larceny, burglary, arson, violation of narcotics laws, murder, rape, assault with intent to kill, assault which inflicts grievous bodily injury, or a violation of subchapters III or IV of this chapter any felony involving abuse or misuse of such person's position or employment in a labor organization or employee benefit plan to seek or obtain an illegal gain at the expense of the members of the labor organization or the beneficiaries of the employee benefit plan, or conspiracy to commit any such crimes or attempt to commit any such crimes, or a crime in which any of the foregoing crimes is an element, shall serve or be permitted to serve-…"

applicable to Plaintiff Davis at that time.  (**See Plaintiff Davis' Discharge Grievance attached hereto as Exhibit D**; and see also **Plaintiff Davis' October 8, 2014 Written Appeal of Defendant PRO Union's GARB Committee's Denial attached hereto as Exhibit H).**

91. Plaintiff Davis' should not have been discharged on September 18, 2014 for the prohibition set forth under 29 U.S.C. § 504(a) was not applicable to Plaintiff Davis. Section 504(a) was inapplicable against Plaintiff Davis at that time because by its very definition, Plaintiff Davis simply was not "convicted" of a federal felony on September 18, 2014.  (**See Plaintiff Davis' Discharge Grievance attached hereto as Exhibit D**; and see also **Plaintiff Davis' October 8, 2014 Written Appeal of Defendant PRO Union's GARB Committee's Denial attached hereto as Exhibit H).**

92. The term "convicted" as it is used under § 504(a) is defined under § 504(c)(1).  29 U.S.C. § 504(c)(1) provides: "For the purpose of this section-- (1) A person shall be deemed to have been "convicted" and under the disability of "conviction" ***from the date of the judgment of the trial court***, regardless of whether that judgment remains under appeal." (emphasis supplied).

93. The significance of this definition was even noted by the United States Attorney and the Department of Labor, in their Response Brief in Opposition to Plaintiff Davis' Motion for Exemption Under 29 U.S.C. § 504(a) filed in his Criminal Matter[18].  At page 2 of their Response Brief, the United States Attorney on behalf of the Department of Labor

---

[18] Plaintiff Davis' Motion for Exemption pursuant to 29 U.S.C. §504(a) is currently pending before Judge Tarnow.  A motion hearing on Plaintiff Davis' Motion for Exemption pursuant to 29 U.S.C. 504(a) was held on November 19, 2014 and at that time, Judge Tarnow took the matter under advisement.  *See* Docket Nos. 59 & 60 in Plaintiff Davis' Criminal Matter.

said:  "As an initial matter, Davis' motion is premature, for two reasons: [the first being] in the absence of judgment of sentence, [Davis] does not stand "convicted" within the meaning of § 504."  ***See* p. 2 of Government's Response Brief, Docket No. 70 in Plaintiff Davis' Criminal Matter.**

94. As noted, Judge Tarnow signed and entered the criminal judgment in Plaintiff Davis' Criminal Matter on December 29, 2014.  Thus, the prohibition set forth under 29 U.S.C. § 504(a) was not applicable to Plaintiff Davis until that date and it was not applicable on the date of he was discharged, September 18, 2014, by Defendant AFSCME.

95. And although Plaintiff Davis was sentenced on December 18, 2014, Judge Tarnow did not actually, and officially, enter and sign, the criminal judgment in Plaintiff Davis' Criminal Matter, until December 29, 2014.  Thus, the actual legal effective date of Plaintiff Davis' criminal judgment was and is December 29, 2014.[19]

96. Accordingly, Plaintiff Davis was legally eligible to remain gainfully employed by Defendant AFSCME under 29 U.S.C. § 504(a) until such time as Judge Tarnow so signed and entered the criminal judgment in Plaintiff Davis' Criminal Matter on December 29, 2014.[20]

97. Plaintiff Davis additionally claims that Defendant AFSCME lacked "just cause" to terminate Plaintiff Davis on September 18, 2014, as "just cause" is  contained in Article 9, Section 1 of the Collective Bargaining Agreement.

---

[19] Although Judge Tarnow announced Plaintiff Davis' sentence during the December 18, 2014 hearing, it is well understood that courts speak through their written orders and not through their oral pronouncements.  *See Bell v. Thompson,* 545 U.S. 794, 805, 125 S.Ct. 2825, 162 L.Ed.2d 693 (2005) ("Basic to the operation of the judicial system is the principle that a court speaks through its judgments and orders.").

[20] Notably, 29 U.S.C. § 504(b) makes it a crime for a labor organization to retain and/or employ a person "convicted" of the listed offenses set forth in § 504(a).

98. Article 9, Section 1 of the Collective Bargaining Agreement by and between Defendant PRO Union and Defendant AFSCME, expressly requires that "**all disciplinary actions shall be for just cause**." (emphasis supplied)  (**See Article 9, Section 1 of the Collective Bargaining Agreement attached hereto as Exhibit O**).

99. Defendant AFSCME did not have "just cause" to terminate Plaintiff Davis on September 18, 2014 as required by the Collective Bargaining Agreement. As noted, Plaintiff Davis remained employed with Defendant AFSCME as a Union Staff Representative, even after his indictment became public.  (**See Plaintiff Davis' affidavit attached hereto as Exhibit A).**

100.   In fact, even after Plaintiff Davis was indicted and his indictment became public, Plaintiff Davis was selected by the President of Defendant AFSCME to represent Defendant AFSCME in June 2012 at the *prestigious* Senior Executives in State and Local Government program, held at Harvard University's Kennedy School of Government.  (**See Plaintiff Davis' affidavit attached hereto as Exhibit A).**

101.   And further to the quality of the conduct of Plaintiff Davis' employment with Defendant AFSCME, many local union presidents and their members wrote letters of support to Judge Tarnow, on behalf of Plaintiff Davis's motion to retain his employment as Staff Representative with Defendant AFSCME and these letters were so supporting his continued employment based upon his skill in representing the local union and their members.  (**See Local Union Presidents' Letters of Support attached hereto as Exhibit M**).

102.   Plaintiff Davis' indictment and a presumed pending incarceration, based upon his judgment of conviction, was not relevant to the merits of Plaintiff Davis' discharge

grievance for the lack of "just cause".  Plaintiff Davis' discharge grievance was seeking to have an arbitrator determine that Plaintiff Davis' discharge on September 18, 2014 was not for "just cause" under the Collective Bargaining Agreement. Further Plaintiff Davis sought the arbitrator to determine that the prohibition set forth under 29 U.S.C. § 504(a) was indeed not applicable to Plaintiff Davis at the time of his termination and discharge on September 18, 2014. And Plaintiff Davis' pending incarceration does not now adversely impact the merits of Plaintiff Davis' discharge grievance for a premature discharge based upon a misinterpretation of 29 U.S.C. § 504(a) and therefore, Defendant PRO Union had no legal basis for unilaterally withdrawing Plaintiff Davis' discharge grievance from arbitration.  (**See Plaintiff Davis' affidavit attached hereto as Exhibit A**).

103.    Plaintiff Davis' discharge grievance was not seeking a determination from an arbitrator as to whether Plaintiff Davis could remain employed by Defendant AFSCME *after* Plaintiff Davis was in fact "convicted" under 29 U.S.C. § 504(a).  That question will be determined by Judge Tarnow.  As noted above, Plaintiff Davis had in fact exercised his right under 29 U.S.C. § 504(a)(B) to seek from Judge Tarnow, as the sentencing judge, an exemption from the prohibition set forth under § 504(a), to be applicable *after* his "conviction."[21]

104.    Plaintiff Davis' claim, *at a minimum*, is that he is due back pay from the Defendant AFSCME from September 3, 2014 through December 29, 2014, the latter date being the date when the criminal judgment was signed and entered by Judge Tarnow in Plaintiff

---

[21] Plaintiff Davis' Emergency Motion for Exemption under 29 U.S.C. § 504(a)(B) is currently pending before Judge Tarnow.

Davis' Criminal Matter.[22]  (**See Plaintiff Davis' affidavit attached hereto as Exhibit A**; and see also **Plaintiff Davis' October 8, 2014 Written Appeal of Defendant PRO Union's GARB Committee's Denial attached hereto as Exhibit H).**

## COUNT III- Defendants Shall Pay Plaintiff's Attorney Fees and Costs

105.    Plaintiff re-alleges and incorporates by reference the allegations contained in the previous paragraphs as if fully set forth herein.

106.    In a hybrid § 301 suit, the employer (Defendant AFSCME) and the union (Defendant PRO) are liable "according to the damage caused by the fault of each." *Vaca v Sipes*, 386 U.S. 171, 197 (1967).

107.    "When a union breaches its duty of fair representation, a member can recover expenses, including attorneys' fees and cost, incurred in pursuing his claims against the employer." *Vencl v International Union of Operating Engineers, Local 18*, 137 F.3d 420, 426 (1998) (citations omitted).

108.    Plaintiff Davis seeks an award of attorney fees and costs to be paid by both Defendants.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs PRAY this Honorable Court enters Judgment against Defendants providing:

a.   For declaratory relief declaring and holding that Defendant PRO Union breached its statutory duty of fair representation by unilaterally withdrawing Plaintiff Davis' discharge grievance from arbitration and by failing to expedite Plaintiff Davis'

---

[22] Plaintiff Davis does not dispute that ***if*** in fact the prohibition set forth in 29 U.S.C. § 504(a) applies to Plaintiff Davis that said prohibition would have been applicable as of December 29, 2014.

arbitration on his discharge grievance.

b.  For declaratory relief declaring and holding that Defendant AFSCME unlawfully and wrongfully terminated Plaintiff Davis on September 18, 2014.

c.  For declaratory relief declaring and holding that Defendant AFSCME did not have "just cause" to terminate Plaintiff Davis on September 18, 2014.

d.  For declaratory relief declaring and holding that Defendant PRO Union shall reinstate and proceed with Plaintiff Davis' arbitration case with AAA.

e.  For an award of costs and attorney fees pursuant to *Vencl v International Union of Operating Engineers, Local 18*, 137 F.3d 420, 426 (1998).

f.  For such further relief as is just and equitable.

Respectfully Submitted,

/s/ANDREW A. PATERSON
ANDREW A. PATERSON (P18690)
Attorney for Plaintiff Robert Davis
46350 Grand River Ave., Suite C
Novi, MI 48374
(248) 568-9712

**DATED: March 2, 2015**